**CANADIAN OVERSEAS ORES LIMITED, Plaintiff-Appellant-Cross-Appellee,**

v.

**COMPANIA DE ACERO DEL PACIFICO S.A.,**
**Defendant-Appellee-Cross-Appellant.**

No. 457, Dockets 82–7618, 82–7640.

United States Court of Appeals,
Second Circuit.

Argued Nov. 28, 1983.
Decided Feb. 6, 1984.

Franz S. Leichter, New York City (Stephen M. Harnik, Wachtell, Manheim & Grouf, New York City, on the brief), for plaintiff-appellant-cross-appellee Canadian Overseas Ores Limited.

George J. Grumbach, Jr., New York City (Louis B. Kimmelman, Linda B. Klein, Mitchell A. Lowenthal, Cleary, Gottlieb, Steen & Hamilton, New York City, on the brief), for defendant-appellee-cross-appellant Compania de Acero del Pacifico S.A.

Before LUMBARD, WINTER and PRATT, Circuit Judges.

WINTER, Circuit Judge:

Appellant Canadian Overseas Ores Limited ("CANOVER") appeals from that portion of an order entered by the United States District Court for the Southern District of New York (Morris Lasker, *Judge*) dismissing its complaint on the ground that the defendant Compania de Acero del Pacifico S.A. ("CAP") was immune from suit under the terms of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et. seq.* (1976). *Canadian Overseas Ores Limited v. Compania de Acero del Pacifico, S.A.,* 528 F.Supp. 1337 (S.D.N.Y. 1982). We affirm Judge Lasker's dismissal on the ground of foreign sovereign immunity and accordingly do not reach the issue briefed by the parties on the cross-appeal.

## BACKGROUND

This litigation began on May 2, 1978, when one Emery Herzberger, then the assignee of CANOVER, a Bermuda corporation, brought an action in New York State Supreme Court, for goods sold and delivered, against CAP, a Chilean corporation in which a controlling interest is owned by the Chilean government. On CAP's motion, the action was removed on May 26, 1978 to the United States District Court for the Southern District of New York. In its moving papers CAP argued that removal was appropriate on the ground that it was an "instrumentality of a foreign state" within the meaning of 28 U.S.C. § 1603(b) and that as a result original jurisdiction lay in the federal district courts. *See* 28 U.S.C. § 1330. CAP noted, however, that it might later be entitled to assert the defense of sovereign immunity. Herzberger then moved to have the case remanded to state court. In opposing this motion CAP again

argued the existence of original federal jurisdiction but stated that it did "not intend by arguing in favor of such jurisdiction to waive its right to raise the substantive defense of sovereign immunity." The district court denied Herzberger's motion for remand on August 17, 1978.

On September 11, 1978, CANOVER, having somehow reacquired its interest from its onetime assignee, Herzberger, filed an amended complaint. The amended complaint alleged, in addition to the original claim for goods sold and delivered ("Count I"), that CAP was liable to CANOVER for loans made by CANOVER to a company later acquired by CAP ("Count II"). On September 25, CAP waived certain procedural defenses to the amended complaint pursuant to a stipulation in which CANOVER acknowledged that CAP had not waived any procedural or substantive defenses not set forth in the stipulation. Sovereign immunity was not among the defenses set forth. During the first four months of this litigation CAP thus implicitly or explicitly reserved its right to assert sovereign immunity in three separate documents—its petition for removal, its memorandum in opposition to remand and the stipulation concerning the amended complaint.

The parties had also stipulated that CAP had until November 30, 1978 "to answer or otherwise move with respect to" the amended complaint. On that date CAP moved to dismiss Count I pursuant to Fed.R.Civ.P. 12(b)(6), and to dismiss Counts I and II pursuant to the doctrine of *forum non conveniens*. CAP also moved in the alternative to stay the entire case pending the outcome of Chilean litigation involving CAP and CANOVER. CAP's motion to dismiss or to stay lay pending for almost two years, a delay apparently attributable in large part to difficulties in obtaining affidavits from persons outside the United States. On November 14, 1980 Judge Lasker informally apprised the parties that the *forum non conveniens* motion and the motion to stay would be denied and that a written opinion and order would follow. He further directed the parties to go forward with discovery.

Judge Lasker conveyed no view on the Rule 12(b)(6) motion made as to Count I. When this omission was brought to his attention, he indicated that it would be resolved in the written opinion and order already promised.

Pursuant to Judge Lasker's instruction, CAP and CANOVER engaged in preliminary discovery in December, 1980, with CANOVER serving notice of depositions, CAP serving interrogatories and both parties exchanging requests for the production of documents. Before either side had an opportunity to respond to the other's discovery request, counsel for CAP informed the district court that it intended to assert its defense of sovereign immunity and that accordingly it would promptly move to dismiss the entire action for lack of subject matter jurisdiction. Such a motion, made pursuant to Fed.R.Civ.P. 12(b)(1), was filed on January 30, 1981. On February 20, CANOVER filed a memorandum of law in which it claimed that CAP should be deemed to have waived its defense of sovereign immunity. On March 2, CANOVER submitted answers to CAP's first set of interrogatories.

In an opinion dated January 7, 1982 and supplemented on January 19, Judge Lasker disposed of all matters then pending in the case. He granted CAP's Rule 12(b)(6) motion to dismiss Count I, denied CAP's *forum non conveniens* motion and alternative motion to stay both counts, and granted CAP's motion to dismiss the action on the ground of sovereign immunity, finding that CAP had not waived the defense. *Canadian Overseas Ores Limited,* 528 F.Supp. at 1339–47. Judge Lasker also held that CANOVER's cause of action against CAP could not be maintained in light of our then recent decision in *Verlinden B.V. v. Central Bank of Nigeria,* 647 F.2d 320 (2d Cir.1981), which held the FSIA unconstitutional in certain relevant respects. *Canadian Overseas Ores Limited* at 1347.

Pursuit of this appeal was suspended by stipulation pending the Supreme Court's review of our decision in *Verlinden.* After the Supreme Court reversed and upheld the

constitutionality of the FSIA, *Verlinden B.V. v. Central Bank of Nigeria,* —— U.S. ——, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983), *rev'g* 647 F.2d 320 (2d Cir.1981), the appeal was renewed.

We affirm.

## DISCUSSION

The sole issue we need reach concerns CAP's alleged waiver of the defense of sovereign immunity. CANOVER concedes that CAP would have been entitled to assert the defense at the outset of the litigation. Nevertheless, it argues that CAP's conduct constitutes an implicit waiver of the defense in two alternatively dispositive respects: (i) CAP was required as a matter of law to assert the defense at an earlier stage of the litigation, or (ii) the nature of CAP's participation in the litigation, including discovery, constituted a waiver. We disagree.

We deal first with the question of when the defense of sovereign immunity is waived as a matter of law under the FSIA. Under that statute, foreign sovereign immunity is a question of statutory subject matter jurisdiction. 28 U.S.C. § 1330; *see Verlinden B.V. v. Central Bank of Nigeria,* 103 S.Ct. at 1967 n. 5. Unlike other questions of subject matter jurisdiction, however, the defense can be waived "either explicitly or by implication." 28 U.S.C. § 1605(a)(1). The relevant legislative history does not discuss in any great detail the circumstances under which a court must infer waiver of sovereign immunity through participation in litigation. It does indicate, however, that "[a]n implicit waiver would ... include a situation where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity," H.R.Rep. No. 1487, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6617, and that sovereign immunity is an "affirmative defense which must be specially pleaded" for a court to consider it. *Id., reprinted in* 1976 U.S.Code Cong. & Ad.News at 6616.

These references, which focus on "pleading" as the point of no return for asserting foreign sovereign immunity, persuade us that CAP did not automatically waive the defense by not asserting it at an earlier time. CAP has never filed a responsive pleading in this litigation nor has it been obliged to do so under the Federal Rules of Civil Procedure. Since the Rules explicitly distinguish between pleadings and motions, *compare* Fed.R.Civ.P. 7(a) *with* Fed.R.Civ.P. 7(b); *see* Fed.R.Civ.P. 12(a); Fed.R.Civ.P. 12(b), CAP's various motions were not pleadings within the meaning of the Rules. In light of the clear implication of the legislative history that the defense of sovereign immunity is lost if not made in the first responsive pleading, we refuse to hold that the filing of a variety of motions, including a motion to dismiss, automatically waives the defense.

The foregoing argument assumes the FSIA is to be interpreted in harmony with the Federal Rules of Civil Procedure. CANOVER challenges this assumption, arguing that Section 1608(d) of the FSIA compels the conclusion that Congress did not intend to integrate the entire structure of the Federal Rules of Civil Procedure with the FSIA. The section in question requires that the foreign sovereign must "serve an answer or other responsive pleading" to a complaint within sixty days of service or be in default. 28 U.S.C. § 1608(d). Regardless of distinctions drawn in the Federal Rules, CANOVER argues that for the purposes of the FSIA motions under certain circumstances must qualify as responsive pleadings, or CAP would have been in default under the terms of the statute.

Legislative history belies this contention, however. A House Report discussing Section 1608(d) states that the provision was intended to place on foreign sovereigns the same responsibility to respond to complaints as is placed on the United States government by Fed.R.Civ.P. 12(a). *See* H.Rep. No. 1487, *supra, reprinted in* 1976 U.S.Code Cong. & Ad.News at 6624. Rule 12(a), in turn, distinguishes between motions and pleadings and provides that a party replying to a complaint by motion need not file

any necessary responsive pleadings until ten days after disposition of the motion. This legislative history refutes CANOVER's proffered interpretation of Section 1608(d) and strengthens our conviction that Congress intended that the FSIA be interpreted in harmony with the Federal Rules of Civil Procedure.

We also note that in claiming its defense of sovereign immunity CAP acted in conformity with the rules concerning objections to subject matter jurisdiction. Lack of subject matter jurisdiction is not one of the four defenses deemed waived if not asserted in a motion to dismiss made pursuant to Rule 12. *See* Fed.R.Civ.P. 12(h)(1). Indeed, Rule 12(h)(3) explicitly indicates that objections to subject matter jurisdiction may be made at any time during trial or appeal. The exceptional waivability of sovereign immunity as a jurisdictional defense suggests that the FSIA should be read to modify Rule 12(h)(3) only to the extent that the FSIA automatically bars assertion of the defense only after a responsive pleading has been filed.

CANOVER also argues that the FSIA incorporates prior case law supposedly holding that the defense must be asserted at the outset of litigation or it is waived. Even if prior case law is relevant to the interpretation of the FSIA on this issue, a proposition which is not self-evident, none of the cases cited by CANOVER support its position since the foreign sovereign was found in each to have waived its immunity after failing to assert the defense in an answer or other responsive pleading. *See, e.g., Richardson v. Fajardo Sugar Co.,* 241 U.S. 44, 36 S.Ct. 476, 60 L.Ed. 879 (1916); *Flota Maritima Browning De Cuba, S.A. v. M/V Ciudad De La Habana,* 335 F.2d 619 (4th Cir.1964); *The Sao Vicente,* 281 F. 111 (2d Cir.), *cert. dismissed,* 260 U.S. 151, 43 S.Ct. 15, 67 L.Ed. 179 (1922).

■ We turn now to the question of whether the character of CAP's participation in the litigation constitutes a waiver. We agree with CANOVER that the fact that the failure to assert sovereign immuni-

ty in a responsive pleading is a waiver does not mean that a party may securely withhold assertion of the defense until that time in every case. We believe that district courts have discretion to determine that the conduct of a party in litigation does constitute a waiver of foreign sovereign immunity in light of the circumstances of a particular case. However, Judge Lasker declined to find such a waiver in the present case, a determination which is not clearly erroneous. CANOVER itself had full notice that CAP had reserved the defense on three occasions during the first four months of this litigation and made no attempt to force CAP either to assert it or waive it. While the pendency of the complaint was protracted, the case lay dormant during much of the time because the parties stipulated to repeated delays as they sought to secure needed affidavits. Under the circumstances, while Judge Lasker might have found a waiver, his failure to do so was not clearly erroneous. We emphasize that our affirmance here in no way detracts from the discretionary authority of district courts to effect an earlier resolution of the issue by requiring, on the motion of a party or *sua sponte,* assertion or abandonment of the defense prior to the submission of a responsive pleading. Nor do we wish to encourage parties considering assertion of the defense of sovereign immunity to procrastinate. Security lies either in the early assertion of the defense or in securing a deadline from the district court for its assertion.

Affirmed.